## FIRST TRUST & DEPOSIT CO. et al. v. UNITED STATES.
### No. 951.

District Court, N. D. New York.
Sept. 27, 1944.

Hiscock, Cowie, Bruce, Lee & Mawhinney, of Syracuse, N. Y. (M. R. Quinn, of Syracuse, N. Y., of counsel), for plaintiffs.

Irving J. Higbee, U. S. Atty., of Syracuse, N. Y. (B. Fitch Tompkins, Asst. U. S. Atty., of Syracuse, N. Y., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Leon F. Cooper, Sp. Assts. to Atty. Gen., of counsel), for defendant.

BRYANT, District Judge.

This is an action by the executors of a decedent's estate to recover income taxes of the estate alleged to have been overpaid, in the amount of $4,879.60, for the calendar year 1936. The facts have been stipulated. The salient ones are:

1. The plaintiffs are the executors of Leonard A. Saxer, who died a resident of Syracuse, New York, on May 1, 1933. The estate was in process of administration during and subsequent to the year 1936.

2. At the time of his death, the decedent was indebted to the First Trust & Deposit Company, Syracuse, New York, for the payment of which indebtedness the decedent had pledged certain of his securities as collateral.

3. A federal estate tax return was filed in behalf of the estate. This showed a net estate of $30,758.26 at date of death of decedent. This amount being less than the statutory exemption for tax purposes, no federal estate tax was assessable and none was paid.

4. During the year 1936 certain of the pledged securities were sold by the bank for $88,021.32, all of which was credited upon and in reduction of the indebtedness due it. During the year 1936 the executors sold certain unpledged securities for $10,400.47. All of the securities, both the pledged, sold by the bank, and the unpledged, sold by the executors in 1936 for a total of $98,421.79, had a fair market value, as at the date of decedent's death, of $40,704.45. Therefore, the securities that were sold in 1936, the pledged and unpledged, brought $56,717.34 more than their fair market value at the date of decedent's death.

5. An income tax return was filed in behalf of the estate for the calendar year 1936 in which there was reported the $56,717.34, as gain or profit from the sales of securities in that year, and income tax due in the amount of $4,879.60 which was paid in four equal installments of $1,219.90 each during the year 1937, on March 12, June 16, September 11 and December 27.

6. At the time of decedent's death the First Trust & Deposit Company owned notes executed by the decedent's daughter in the face amount of $185,879.72 and held as collateral securities, standing in her name, of the value of $49,130. The decedent had guaranteed payment of these notes. In May, 1938, the Surrogate of Onondaga County entered in Surrogate's Court a decree that the notes, signed by decedent's daughter and guaranteed by decedent, were in fact obligations of the decedent and, also, that the securities standing in the daughter's name, which had been pledged as collateral security for the payment of the notes signed by her, were in fact securities belonging to the decedent.

By the inclusion of said notes as obligations of decedent and said securities as belonging to him, the status of decedent's estate changed so that, at the time of his death, instead of there being a net of $30,758.26, as shown on the Federal estate tax return, the estate was insolvent to the extent of $105,991.46.

7. Including in the decedent's estate the assets and liabilities charged thereto by the Surrogate's decree of May, 1938, the estate was, on January 1, 1936, the beginning of the taxable period here in question, insolvent in the amount of $36,595.86. During the year 1936 there were twenty separate sales of securities from which the profits of $56,777.34, in controversy, were realized. Two of these sales were made at times when the liabilities exceeded the assets figured at market value and the others at times when the estate is known, or must be presumed, to be solvent. The estate, on December 31, 1936, was solvent in the amount of $14,049.79.

164

8. In April, 1939, the plaintiff filed a claim for a refund of $4,879.60, all of the income taxes reported and paid for the year, 1936. The contention in the claim for refund and in the present action is that the $56,717.34, the amount by which the securities, sold in 1936, exceeded their market value at the date of decedent's death, which was reported as income, was not taxable income of the estate in 1936 because the estate was "insolvent at all times." The claim for refund was disallowed and this action was timely brought.

■ Estates of decedents, including estates in the process of administration or settlement, are subject to the payment of income taxes upon net income computed in the same manner and on the same basis as in the case of individuals. Sections 161(a)(3) and (b) and 162, Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, §§ 161(a)(3), (b), 162. Both parties accept the statement. They differ over the question of net income. Plaintiffs contend that there was not gain or profit in 1936.

■■ The executors took the property at its fair market value. This was equivalent to cost price of securities held by an individual. Pledged securities were a part of the estate. The executors were chargeable with them and had to account for them. Their first duty was to liquidate the estate and pay the creditors. This was partly done in 1936 through sales of some of the free and some of the pledged assets. Gains were realized and applied in part payment of decedent's obligations. The fact that all, or nearly all, had to be paid to the pledgee does not alter the situation. The gains were income and, regardless of the financial condition of the taxpayer, must be included in the gross income of taxpayer for income purposes. No part of decedent's indebtedness was "forgiven." Therefore the cases dealing with the taxability of forgiven indebtedness are not in point either upon the facts or issues involved.

I conclude:

1. That the questioned income taxes were properly and lawfully reported, assessed and collected and that plaintiff did not overpay.

2. Defendant is entitled to judgment of dismissal of the complaint.

Judgment may be entered in accordance with the findings and conclusions stated herein.